UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ERIC B. GLASSBURN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of the )<br>Social Security Administration, )<br>)<br>Defendant. ) | CAUSE NO.: 3:16-CV-26-TLS |

**OPINION AND ORDER**

The Plaintiff, Eric B. Glassburn, seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income. The Plaintiff claims that he would be unable to maintain substantial gainful employment due to limitations brought about by various physical impairments.

**PROCEDURAL HISTORY**

The Plaintiff applied for Social Security Disability Insurance and Supplemental Income benefits on December 26, 2013, alleging he became disabled on November 11, 2013, when he was the first person laid off from his electrical journeyman job following a years-long history of repeated injuries and surgeries. The Plaintiff's application was denied initially and upon reconsideration. On September 4, 2015, an administrative law judge (ALJ) held a hearing on the Plaintiff's application. On September 17, 2015, the ALJ issued a holding that the Plaintiff was not entitled to benefits because he was not disabled under the relevant provisions of the Social Security Act. On November 17, 2015, the Appeals Council denied review of the ALJ's decision,

thereby making the ALJ's decision the final decision of the Commissioner. The Plaintiff subsequently filed suit pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

## **THE ALJ's HOLDING**

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the Plaintiff has not engaged in SGA since the alleged onset of disability and thus, the Plaintiff satisfies the step one inquiry. (R. 16.) In step two, the ALJ determines whether the claimant has a severe impairment limiting the ability to do basic work activities pursuant to § 404.1520(c). Here, the ALJ determined that the Plaintiff's impairments, including chronic obstructive pulmonary disease (COPD), history of cervical fusion, status-post lumbar fusion, history of left shoulder surgery, osteoarthritis of the hands, and atrophy of the left upper extremity, are severe impairments because they significantly limit his ability to perform basic work activities. (*Id.*) Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s),

considered singly or in combination with other impairments, rise to this level, he earns a presumption of disability "without considering [his] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, falls short, an ALJ must move to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things he can still do physically, despite his limitations—to determine whether he can perform this "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

In the case at hand, the ALJ determined that the Plaintiff's impairments do not meet or equal any of the listings in Appendix 1, and that he has the RFC to perform light work, as defined by § 404.1567(b). (R. at 17–18.) Specifically, the ALJ held that the Plaintiff is able to lift, carry, push and pull twenty pounds occasionally and up to ten pounds frequently, stand and/or walk up to six hours in an eight-hour workday and sit up to six hours in an eight hour workday, with normal breaks and allowing him to sit or stand alternatively at will, provided that he is not off task more than ten percent of the work period. (R. at 18.) However, the ALJ added that the Plaintiff can never climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs, and can occasionally balance, stoop, crouch, kneel, and crawl. (*Id.*) The ALJ also found that the Plaintiff can occasionally reach (front and overhead) and handle with the left upper extremity. (*Id.*) The ALJ additionally found that the Plaintiff can have occasional exposure to temperatures, fumes, odors, and pulmonary irritants, but no exposure to hazards. (*Id.*)

In arriving at the RFC, the ALJ examined the Plaintiff's testimony and took into consideration the credibility factors, pursuant to SSR 96-7p. The ALJ detailed the Plaintiff's testimony regarding his work history, atrophy in his left shoulder, COPD, asthma, and arthritis in

multiple extremities. (R. at 18.) The ALJ also detailed the Plaintiff's testimony regarding his back surgery, including his assertion that he can only sit for around an hour at a time and stand for 45 minutes to 1.5 hours before needing to catch his breath. (*Id.*) The ALJ noted that the Plaintiff indicated that he can handle lighter chores for short periods of time. (*Id.*) The ALJ also wrote—at issue here—that the Plaintiff "noted in February 2014 that he worked 15-20 hours a week." (R. at 21.) The ALJ found that, although the Plaintiff testified that COPD decreases his stamina, Dr. del Pillar, his treating physician, found that the Plaintiff had normal pulmonary examinations, including clear lungs. (*Id.*) The ALJ also found that the Plaintiff noted improvement as well with medication. (*Id.*) The ALJ noted that at the hearing, the Plaintiff stated that he had improvement in his back pain since surgery, and testified that he can physically do more post-surgery, including lifting 15-20 pounds. (*Id.*) The ALJ noted that, although the Plaintiff complains of arthritis in his extremities, atrophy in his left shoulder, and back pain, the record shows that the Plaintiff has an intact gait and full strength in his extremities. (*Id.*) The ALJ further noted that, at the consultative examination, the Plaintiff had full range of motion in his lumbar spine. (*Id.*) The ALJ found that Dr. Jamie Gottlieb, one of Plaintiff's treating physicians for his back issues, noted in May 2014 that the Plaintiff might require lumbar surgery, but did not recommended surgery until January 2015. (*Id.*) The ALJ also noted that the Plaintiff did not have any treatment for left shoulder pain until February 2014, when he saw Dr. Thomas Dr. Akre, another treating physician. Dr. Akre found that the Plaintiff had atrophy in his left upper extremity but with normal strength in his upper extremities. (*Id.*) The ALJ further noted that the Plaintiff had intact grip strength at his consultative examination the following month. (*Id.*) The ALJ also noted that the Plaintiff in April 2014, saw a specialist, Dr. Mih, who also indicated that he had atrophy in his left upper extremity, but with normal strength. The ALJ

further noted that Mih recommended a tendon transfer, but the Plaintiff did not have that surgery. (*Id.*)

The ALJ gave significant weight to the state agency consultants. The consultants found that the Plaintiff can perform light work with occasional handling and reaching with the left upper extremity as well as environmental and postural restrictions. (*Id.*) The state agency consultants also found that the Plaintiff is limited to occasional reaching and handling with the left upper extremity due to the atrophy in his left shoulder. (*Id.*) The state consultants additionally found that the Plaintiff has postural restrictions due to his cervical and lumbar fusions, which decreases his mobility. (*Id.*) The consultants found that the Plaintiff requires lifting restrictions to light work because of the arthritis in his hands, to which pain increases with heavier lifting. (*Id.*) Finally, the state agency consultants found that the Plaintiff has environmental restrictions due to COPD, which is worse in certain conditions.

On the other hand, the ALJ gave little weight to Dr. Gottlieb's and Dr. Akre's opinions because the ALJ found them inconsistent with the record. (R. at 22.) The ALJ noted that Dr. Akre indicated that in April 2014, the Plaintiff could only walk or stand occasionally, as well as lift 10 pounds occasionally. (*Id.*) The ALJ consider that based on the record, the Plaintiff had the ability to lift up to 20 pounds, including at the consultative examination and hearing. (*Id.*) The ALJ noted that the Plaintiff only saw Dr. Akre on one other occasion prior to his proffered medical opinion, and that Dr. Akre himself noted that the Plaintiff's attorney sought a letter regarding the Plaintiff's impairments. (*Id.*) The ALJ also noted that Dr. Akre's treatment of the Plaintiff was for the left shoulder, which would have minimal effect on the Plaintiff's ability to walk or stand. (*Id.*) As for Dr. Gottlieb, the ALJ noted that although he opined that the Plaintiff was fully disabled, Dr. Gottlieb had not recommended any specific care for the Plaintiff's

cervical spine, but instead noted that his hardware was intact. Accordingly, the ALJ found that contrary to Dr. Gottlieb's opinion, the Plaintiff had normal findings upon examination as well, including intact gait and normal strength in his extremities, and that at the hearing, the Plaintiff had testified that his pain had actually improved since his back surgery.

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. In a substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In other words, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

When an ALJ recommends that the Agency deny benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision,

the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008). Conclusions of law are not entitled to such deference, however, so where the ALJ commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

### A. The ALJ's Evaluation of Medical Opinions

The Plaintiff argues that the ALJ improperly determined that the Plaintiff can perform light work because the ALJ declined to give adequate weight to that of two of his treating physicians: Dr. Gottlieb and Dr. Akre. "The ALJ must give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (first citing 20 C.F.R. §§ 404.1527(c)–(d); then citing *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994); and then citing *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993)). "Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." *Id.* (first citing 20 C.F.R. § 404.1527(c); then citing *Luna v. Shalala*, 22 F.3d 687, 690 (7th Cir. 1994)). A court on review must uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010) (citing *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001)).

7

**1.**     *Dr. Gottlieb's Opinion*

Dr. Gottlieb treated the Plaintiff for back injuries and performed the Plaintiff's lumbar fusion surgery on February 17, 2015. Dr. Gottlieb provided two medical opinions regarding the Plaintiff's impairments. He wrote the first on October 15, 2014—after the Plaintiff had a lumbar MRI taken, but before the Plaintiff's back surgery.[1] In that opinion, Dr. Gottlieb opined that the Plaintiff needed to lie down for periods of 30 to 45 minutes during the day, was precluded from sedentary work, and was fully disabled. (R. at 891.) After the surgery, Dr. Gottlieb wrote a similar opinion, adding that "after lumbar fusion of this magnitude, the recovery period can be from eighteen to twenty-four months." (R. at 891.) The ALJ assigned little weight to Dr. Gottlieb's opinions because she found they were inconsistent with the record.

The Plaintiff argues that Dr. Gottlieb's expert medical opinion was entitled to more weight because he was one of the Plaintiff's treating physician, and that Dr. Gottlieb's conclusion that the Plaintiff is disabled is supported by the record. The Defendant argues that the ALJ's decision was correct because the bulk of Dr. Gottlieb's opinions are merely conclusions that are reserved for the Commissioner, and that any non-conclusory opinions are not supported

---

[1] Dr. Gottlieb's opinion read in relevant part:

> He had a left shoulder surgery that ended up with an axillary nerve injury and as permanent nerve damage and weakness and lack of function in that left arm. He has had right shoulder surgery with residual dysfunction in the right arm. He has had elbow surgery as well with nerve damage. He is following with me for lumbar spondylosis, scoliosis and stenosis at L2 through S1 with spondylolisthesis at L3-4 and L4-5. At this point, I do believe he is fully disabled. He has issues with back, leg and arm symptoms with nerve damage. He does have intractable bouts of pain that are only alleviated by him lying down for periods of up to 30 to 45 minutes that came on unpredictably on a daily basis. This precludes him from even doing sedentary-type work.

(R. at 894.)

by the record. The Defendant argues that most of Dr. Gottlieb's opinions can be distilled into three conclusory statements: (1) that the Plaintiff was "fully" disabled, (2) that the Plaintiff was unable to perform sedentary work, and (3) that the Plaintiff required a rest period of 18 to 24 months after his surgery. (Def.'s Br. at 14; ECF No. 26.)

"[T]he regulations required the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(c)). But "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). But "the ALJ is not required to give controlling weight to the ultimate conclusion of disability—a finding specifically reserved for the Commissioner." A statement by a medical source that a claimant is "disabled" or "unable to work" is a statement on an issue reserved to the Commissioner, and not an opinion which can be binding or given controlling weight or special significance. 20 C.F.R. §§ 4.04.1527(e)(1), 416.927(e)(1); SSR 96-5p.

Dr. Gottlieb opined that the Plaintiff periodically had to lie down for 30 to 45 minutes during the day due to "unpredictable bouts of intractable pain." (R. at 891.) The ALJ evaluated Dr. Gottlieb's opinion, but assigned it little weight because it was incongruous with both the non-examining physician state agency consultants' conclusions. State agency medical consultant Fernando R. Montoya, M.D. reviewed the Plaintiff's file and opined that the Plaintiff could perform light work with additional postural and environmental limitations. (R. at 67–70.) State agency medical consultant J. Sands, M.D. also reviewed the record in August of 2014 and

9

reached the same conclusion as Montoya. (R. at 89–92.) The ALJ also detailed the findings of consultative examiner Ralph Inabnit, D.O. His examination showed that the Plaintiff had a normal gait, normal sensation and tone in his extremities, slightly diminished strength in his left upper extremity, but full strength in his right upper extremity. (R. at 19–20.) Inabnit did not find the Plaintiff needed to lie down. (*Id.*)

The ALJ's conclusion that Dr. Gottlieb's opinions are inconsistent with the record is not supported by substantial evidence. Dr. Gottlieb's opinions that the Plaintiff must lie down for periods of up to 30 to 45 minutes on a daily basis and that the Plaintiff required an 18 to 24 month recovery period following his lumbar surgery are supported by Dr. Gottlieb's extensive treatment history of the Plaintiff. The lumbar fusion surgery, and the prognosis following that surgery are evidence in itself that the Plaintiff has short and long term functional limitations. The ALJ did not explain how normal gait and normal strength contradict Dr. Gottlieb's opinion that the Plaintiff will have bouts of pain that require periods of lying down.

The Plaintiff also argues that the ALJ's findings and citations to the April 2014 lumbar MRI study are incorrect. The Defendant, in response, argues that both the Plaintiff and the ALJ misinterpreted the "highly detailed cervical and lumbar MRI studies taken in April 2014." (Def.'s Br. 6.) The Defendant argues that the Plaintiff is correct that the ALJ's decision included erroneous citations, but that the ALJ properly pointed out that the record reflected that the Plaintiff showed normal gait and normal strength in his extremities. (*Id.*) The MRI showed moderately severe to severe stenosis on several spinal segments, including explicit nerve root impingement on five different nerve roots. This comports with Dr. Gottlieb's medical opinion.

The ALJ's finding that Dr. Gottlieb's opinions are not "supported by the evidence in the record," is insufficient given Dr. Gottlieb's extensive treatment history of the Plaintiff and the

ALJ's mischaracterizations of the April 2014 MRI. On remand, the ALJ must properly weigh Dr. Gottlieb's opinions of the Plaintiff's functional limitations based on the entire record, including Dr. Gottlieb's treatment history of the Plaintiff, and the April 2014 MRI.

**2.**     *Dr. Akre's Opinion*

Next the Court evaluates Plaintiff's contention that the ALJ did not provide adequate reasons for discounting Dr. Akre's expert medical opinion. The Defendant argues that the ALJ was correct in assigning little weight to Dr. Akre's opinions because like Dr. Gottlieb's opinions, Dr. Akre's were inconsistent with both the Plaintiff's own statements and the record as a whole.

In four status notes, Dr. Akre wrote various statements about the Plaintiff's condition. (R. at 342, 353, 388, 761.) Three of these notes were written prior to the alleged disability onset date of November 11, 2013. Dr. Akre opined in March 2012 that the Plaintiff could perform light work activity with limited overhead movement and perform limited lifting of not greater than five pounds with the left upper extremity. (R. at 342.) Dr. Akre followed with a July 2012 opinion, again finding that the Plaintiff could return to light work activity, lifting twenty pounds occasionally and ten pounds frequently, and refraining from engaging in significant walking, standing, sitting, or pushing and pulling of arm and leg controls (R. at 353.) Dr. Akre added that the Plaintiff should wear a sling on his left arm at all times. (*Id.*) In September 2013, Dr. Akre's notes indicated that the Plaintiff had appeared for an appointment. (R. at 388.) In Dr. Akre's last opinion he found that the Plaintiff could occasionally lift ten pounds, walk or stand on an occasional basis, and carry articles like small tools. (R. at 761.) "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10. Light work may involve a good deal of walking or standing; or alternatively, light work may involve sitting most of the time with

11

some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b). The ability to perform light work also encompasses an ability to perform sedentary work, absent additional factors such as loss of fine dexterity or inability to sit for long periods of time. *Id.*

The Defendant argues that Dr. Akre's April 2014 opinion that the Plaintiff could only lift ten pounds is contradicted by the Plaintiff's own statements, with the Plaintiff testifying that he could lift up to twenty pounds. (R. 21–22; (citing R. 48, 761.)) The Defendant also argues that the testimony from both State agency medical consultants contradict Dr. Akre's April 2014 conclusion as well. The Plaintiff argues that "[n]either the paper-reviewing physicians nor the ALJ recognize what three examining physicians and the ALJ herself have observed: that [Plaintiff] is unable to lift his left arm overhead *at all*, and that his ability to reach in front is less than normal range of motion, due to his paralyzed left deltoid." (Pl.'s Br. 23–24; ECF No. 20 (emphasis in original).) The Plaintiff also argues that the ALJ mischaracterized the Plaintiff's treatment with Dr. Akre and failed to discuss evidence predating his disability onset date. The Plaintiff argues that the ALJ inaccurately detailed the Plaintiff's treatment history with Dr. Akre by stating that Dr. "Akre . . . only saw the claimant on one other occasion prior to his [April 2014] opinion." (R. at 22.) The Defendant, in turn, argues that the Plaintiff "attempts to divert the Court's attention away" from the weight determination of Dr. Akre's opinion by mischaracterizing the Plaintiff's treatment history. "While it is true that the regulations require an ALJ to consider opinions offered by medical experts, an ALJ is not bound by those opinions and must evaluate them in the context of the expert's medical specialty and expertise, supporting evidence in the record, and other explanations regarding the opinion. *Haynes v. Barnhart*, 416 F.3d 621, 630 (7th Cir. 2005) (citing 20 C.F.R. §§ 404.1527(f)(2); and then 416.927(f)(2)). "Likewise, the relevant policy statement reinforces the requirement that the ALJ consider the

supportability of the opinion, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the state agency medical or psychological consultant or other program physician or psychologist." *Id.* (citing SSR 96-6p).

Upon review of the Record, the Court is not confident that the ALJ gave appropriate consideration to Dr. Akre's opinions. Although the ALJ devoted significant space in her Decision to discussing the Plaintiff's medical history, including Dr. Akre's medical opinions, the ALJ never once mentioned the Plaintiff's long treatment history with Dr. Akre and corresponding treatment notes in her Decision. The record shows Dr. Akre had 20 office visits with the Plaintiff, from February 2012 through April 2014. Nineteen of these office visits occurred before Dr. Akre provided an opinion of the Plaintiff's functional limitations. During these visits, Dr. Akre performed multiple left and right upper extremity surgeries on the Plaintiff. The ALJ incorrectly observed that the Plaintiff "did not have any actual treatment for left shoulder pain until February 2014 when he saw Dr. Akre." (R. 21.) The Plaintiff had multiple surgeries for left shoulder problems.

Here, the ALJ failed to consider Dr. Akre's treatment history with the Plaintiff and treatment notes regarding the Plaintiff's prior surgeries. Further, review of Dr. Akre's entire treatment history of the Plaintiff reveals why each of Dr. Akre's opinions are different, but not necessarily inconsistent. The treatment history shows the Plaintiff's condition changing over time, as conditions in his left shoulder and lower back appeared to have further deteriorated. An ALJ is obliged to consider all relevant evidence and cannot "cherry-pick" facts that support a finding of non-disability while ignoring other evidence. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Accordingly, upon review of the record, the Court does not find substantial evidence

in the record in support of the ALJ's assessment of the medical opinions from the Plaintiff's treating sources.

B.  **Credibility Findings**

The Plaintiff also challenges the ALJ's assessment of his credibility. The Plaintiff argues that remand is required because the ALJ made "patently wrong" credibility findings, particularly when the ALJ found that "the claimant had earnings of $10,400.00 in 2014," (R. at 16), and that "[t]he [Plaintiff] noted in February 2014 that he worked 15-20 hours a week." (R. at 21.)

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

SSR 96-7p. Furthermore, the ALJ must provide "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight." SSR 96-7p. The Seventh Circuit has consistently held that an ALJ's credibility finding is afforded "special deference" and that a reviewing court must accept the ALJ's credibility finding unless it is "patently wrong." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010); *see also Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012). "Not all of the ALJ's reasons must be valid as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 723 (7th Cir. 2009). Although an ALJ's credibility determinations are entitled to special deference, the ALJ is still required to "build an accurate and logical bridge

between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (internal quotation marks and citations omitted).

The Plaintiff argues that the ALJ made specific patently wrong credibility determinations when, contrary to the record, the ALJ found that the Plaintiff was working 15-20 hours a week in February 2014, but in fact the Plaintiff had not worked since the alleged onset date of his disability of November 2013. The Plaintiff argues that this discrepancy occurred because the ALJ incorrectly interpreted Dr. Akre's notes. First, the Plaintiff argues that the ALJ incorrectly interpreted the phrase "works 15-20 hours" for the Plaintiff's employment, when in fact the phrase was in reference to the effectiveness of a prescribed drug. Second, the Plaintiff argues that Dr. Akre's chart contained a series of transcription errors of which were used in the ALJ's opinion. The Plaintiff argues that the ALJ's interpretation of Dr. Akre's transcription errors is highly prejudicial. The Plaintiff also argues that this discrepancy is compounded by the ALJ conflating disability payments the Plaintiff received from his union as income for work performed. Further, the Plaintiff argues that the ALJ's evaluation of Dr. Gottlieb's and Dr. Akre's opinions generally produce patently wrong credibility determinations as well.

The Defendant argues that the Plaintiff explained at the administrative hearing that he last worked in November 2013 and that he had only received disability pay from his union. (R. 37–38.) The Defendant further argues that while the ALJ drew attention to the discrepancy, the ALJ never actually reached a conclusion to discredit the Plaintiff for the discrepancy. (R. 21.)

Although the ALJ did not reach a definitive conclusion regarding the Plaintiff's credibility, the ALJ invoked credibility factors, and then immediately outlaid discrepancies between the Plaintiff's asserted disabilities and the record. The ALJ applied credibility factors pursuant to SSR 96-7p, but did not "sufficiently specif[y] to make clear to the individual and to

15

any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight." Along with the ALJ's inconsistent statements concerning the Plaintiff's work history the Court does not think that an accurate and logical bridge has been built between the evidence, particularly the treatment notes and the medical opinions. On remand, the Court instructs the ALJ to consider the entire record in making a credibility determination, and to make clear the credibility determination of the Plaintiff's allegations.

## CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS to the ALJ for further proceedings consistent with this Opinion.

SO ORDERED on May 25, 2017

s/ Theresa L. Springmann<br>
CHIEF JUDGE THERESA L. SPRINGMANN<br>
UNITED STATES DISTRICT COURT